FILED

2014 Mar-21  PM 02:11
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

___Eric Kelly___

Inmate Identification Number:

___AIS # 214653___

___

(Enter above the full name of the plaintiff
in this action)

vs.

___Karen Amborski, Corizon, Inc.___

___Hugh Hood, M.D.___

___Warden DeWayne Estes___

___Assistant Warden, Jimmy Patrick___
(Enter above full name(s) of the defendant(s)
in this action)          "**FINAL AMENDED COMPLAINT**"

---

| NOTICE TO FILING PARTY |
| --- |
| *It is your responsibility to notify the clerk in writing of any address change.* |
| *Failure to notify the clerk may result in dismissal of your case without further notice.* |

Case No. 2:13-CV-00504-MHH-JEO
13

I.   Previous lawsuits

    A.   Have you begun other lawsuits in state or federal court(s) dealing with the same facts involved in this action or otherwise relating to your imprisonment?
        Yes ( )    No ( ✓ )

    B.   If the answer to (A) is "yes," describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuit(s) on another piece of paper, using the same outline.)

        1.   Parties to this previous lawsuit:

           Plaintiff:       ___N/A___

           Defendant(s):   ___N/A___

2

      2.    Court (if Federal Court, name the district; if State Court, name the county)

_____ N/A _____

      3.    Docket number _____ N/A _____

      4.    Name of judge to whom case was assigned ___ N/A _____

      5.    Disposition (for example: Was the case dismissed?  Was it appealed?  Is it still pending?) _____ N/A _____

      6.    Approximate date of filing lawsuit ___ N/A _____

      7.    Approximate date of disposition ___ N/A _____

II.    Place of present confinement __ Limestone Correctional Facility __

    A.    Is there a prisoner grievance procedure in this institution?
        Yes ( ✓ )      No ( ✓ )  Yes to medical, No otherwise,

    B.    Did you present the facts relating to your complaint in the state prisoner grievance procedure?      Yes ( ✓ )    No (  )

    C.    If your answer is YES:

        1.    What steps did you take? __ I filed grievances, wrote warden

            Dewayne Estes and Assistant Warden Jimmy Patrick and talked to Assistant Warden Patrick in person,
        2.    What was the result? __ None _____

    D.    If your answer is NO, explain why not: ___ N/A _____

III. Parties.
   In item (A) below, place your name in the first blank and place your present address in the second blank.

A. Name of Plaintiff(s) _Eric Kelly - AIS # 214653_

   _Dorm I - Bed # 13_

   Address _28779 Nick Davis Road -_

   _Harvest, Alabama 35749_

In item (B) below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use Item (C) for the names, positions, and places of employment of any additional defendants.

B. Defendant _Karen Amborski_

   Is employed as _Health Services Administrator - Corizon, Inc._

   at _Limestone Correctional Facility - 28779 Nick Davis Rd. Harvest, Alabama 35749_

C. Additional Defendants _Hugh Hood, M.D._

   _is employed as the head doctor for the Alabama Department of Corrections_

   _and/or Corizon, Inc. at the Limestone Correctional Facility - 28779_

   _Nick Davis Rd. - Harvest, Alabama 35749_

IV. Statement of Claim

   State here, as briefly as possible, the FACTS of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates and places. Do not give any legal arguments or cite any cases or statues. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets, if necessary.

   _See attached Supplement._

4

_____ See attached supplement, _____

_____

_____

_____

V.    RELIEF

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statues.

Award the Plaintiff $ 200,000.00 in compensatory damages from

each defendant,

Award the Plaintiff $ 650,000.00 in punitive damages from

each defendant,

Award the Plaintiff a declatory judgment,

Award the Plaintiff permanent injunction enjoining or barring the defendants
from denying the Plaintiff back surgery, free-world doctor prescribed medications
and therapy. See attached supplement for further relief,
I declare under penalty of perjury that the foregoing is true and correct.

Executed on _March 14th, 2014_

_____
SIGNATURE

ADDRESS _Dorm L - Bed # 13_

_28779 Nick Davis Road_

_Harvest, Alabama 35749_

AIS # _214653_

5

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

2014 MAR 17 P 12: 10

U.S. DISTRICT COURT
N.D. OF ALABAMA

ERIC KELLY

PLAINTIFF

VS

KAREN AMBORSKI, et.al

DEFENDANTS

FINAL AMENDED CIVIL ACTION COMPLAINT

CASE NUMBER: 2:12- CV-00504 - MHH - JEO

PLAINTIFF'S SUPPLEMENT TO FINAL AMENDED CIVIL COMPLAINT

ERIC KELLY

PLAINTIFF   PRO SE

AIS # 214653

DORM  I - BED # 13

28779 NICK DAVIS RD.

HARVEST, ALABAMA

35749

6

## PARTIES TO THIS ACTION

1. The Plaintiff is Eric Kelly - AIS # 214653
   Dorm I - Bed # 13 - 28779 Nick Davis Road
   Harvest, Alabama 35749

2. A defendant is Karen Amborski.
   Limestone Correctional Facility Health Care Unit
   28779 Nick Davis Road
   Harvest, Alabama 35749

3. A defendant is Corizon, Incorporated.
   Limestone Correctional Facility Health Care Unit
   28779 Nick Davis Road
   Harvest, Alabama 35749

4. A defendant is Hugh Hood, M.D..
   Limestone Correctional Facility Health Care Unit
   28779 Nick Davis Road
   Harvest, Alabama 35749, or, in the alternative!
   301 South Ripley Street
   Montgomery, Alabama 36104

5. A defendant is Dewayne Estes.
   Warden of the Limestone Correctional Facility
   28779 Nick Davis Road
   Harvest, Alabama 35749

7

6.   A defendant is Jimmy Patrick
     Assistant Warden of the Limestone Correctional Facility
     28779 Nick Davis Road
     Harvest, Alabama 35749

7.                    COLOR OF STATE LAW

     The Plaintiff alleges that the named defendants have acted
     under color of state law at all times relevant to this complaint.

8.   CAPACITY IN WHICH THE DEFENDANTS ARE BEING SUED

(a)   The Plaintiff is sueing each and every defendant in his or
      her personal, individual, and private capacity for money damages.

(b)   The Plaintiff is sueing each and every defendant in his or
      her official capacity for declatory judgment and injunctive
      relief.

(c)   The Plaintiff is sueing each and every defendant in his or
      her personal, individual, and private capacity for the filing fees,
      costs incurred in this action, and for attorney fees.

                    THIS COURT'S JURISDICTION

     The Plaintiff alleges that this court has authority and
     jurisdiction to entertain this action and to grant to the Plaintiff
     the relief requested herein pursuant to 28 U.S.C. SS 1331, 1332
     and 1343 of the United States Code.
     The Plaintiff hereby invokes this Court's exclusive jurisdiction

                              8

## STATEMENT OF THE FACTS

The Plaintiff, Eric Kelly, an Alabama State prisoner was incarcerated at the Bibb County Correctional Facility and prison officials assigned him to a top bed on a set of bunk beds. The top bed on a set of bunk beds at the Bibb County Correctional Facility are approximately five (5) feet or more off the concrete floor with no ladder for the inmates to use to get up and down to and from the bed. The Plaintiff fell from his assigned top bed landing on the concrete floor injuring his back. The Plaintiff was subsequently transferred from the Bibb County Correctional Facility to the Limestone Correctional Facility.

The Plaintiff suffering from severe back pain signed up for sick call at the Limestone Correctional Facility. Subsequently the Plaintiff was sent to Valley Imaging Center in Athens, Alabama by Dr. Malcom Hendrick who worked at the Limestone Correctional Facility at the time, for an MRI. An MRI was done on June 10th, 2008 which revealed that the Plaintiff had a bulging disk at L4-5 in his back. After the MRI was done, Dr. Hendrick left the Limestone Correctional Facility.

A new doctor, a female, whose last name was Lampley, arrived at the Limestone Correctional Facility between June 10th, 2008 and June 30th, 2008. Dr. Lampley saw the Plaintiff concerning his back pain and back problems on or about June 30th, 2008 and recommended that the Plaintiff be sent to get

9

surgery on his back. Dr. Lampley informed the Plaintiff that the MRI showed that he had a slipped disk in his back which had entrapped the sciatica nerve which was causing his pain and problems.

Even though Dr. Lampley knew the Plaintiff was suffering extreme pain and experiencing great difficulty in walking and standing for any period of time and recommended that he be sent to get back surgery, defendant Hugh Hood overrode Dr. Lampley's recommendation and denied the Plaintiff surgery.

As of July 22nd, 2008 Dr. Lampley was no longer the doctor at the Limestone Correctional Facility.

On August 4th, 2008 the Plaintiff was seen by a Dr. Crocker who was supposedly a regional doctor for the Alabama Department of Corrections. Dr. Crocker told the Plaintiff that he had a bulging disc in his back and would send him to a surgeon to see if he could do something about it.

On or about September 11th, 2008 the Plaintiff was sent to the Brookwood Medical Center in Birmingham, Alabama where he met with a surgeon whose name the Plaintiff believes was Dr. Francoille. The surgeon told the Plaintiff that he was recommending an Epidural shot for him at the time instead of surgery. The Plaintiff was returned to the Limestone Correctional Facility the same day.

On or about August 10th, 2008 the Plaintiff was seen by a new

10

doctor at the Limestone Correctional Facility by the name of Dr. Doshi. Dr. Doshi told the Plaintiff that the Epidural shot that the surgeon, Dr. Francville ordered for the Plaintiff was denied by defendant Hugh Hood.

On or about February 5th, 2009 I was seen by another doctor at the Limestone Correctional Facility by the name of Dr. Mosley about sending me [Plaintiff] to another surgeon in Huntsville, Alabama for another opinion (recommendation). This was denied by a Dr. Crocker.

On or about February 24th, 2009 the Plaintiff met with a Mr. Hooper, a nurse practioner. The result of the meeting was that he said the Plaintiff had pressure on the sciatica nerve which was causing all of the problems the Plaintiff was experiencing and would send the Plaintiff back to Dr. Crocker, requesting him to send the Plaintiff to a surgeon in Huntsville, Alabama. By March 10th, 2009 nothing had been done for the Plaintiff and he had not seen anyone.

On or about April 14th, 2009 the Plaintiff met with a new doctor at the Limestone Correctional Facility by the name of Dr. Paurparina who tried to be of help on some level to the Plaintiff. Dr. Paurparina questioned the Plaintiff and the fact that the Plaintiff had never received the recommended Epidural shot. Dr. Paurparina put the Plaintiff on narcotic pain medications until he could find one that did not make

11

the Plaintiff sick or one the Plaintiff could function on. (dartane), Dr. Paurparina also recommended a nerve and biopsy test. This was denied to the Plaintiff by someone above Dr. Paurparina, but the Plaintiff was put in for the Epidural shot that had been previously denied to the Plaintiff.

On or about June 9th, 2009 the Plaintiff was sent to a Huntsville, Alabama hospital to get an Epidural shot. Dr. Roddie Grant administered the shot to the Plaintiff and told the Plaintiff that it may not be of any help if he did not already have surgery. Dr. Grant said that the shot would not fix the problem and that the Plaintiff would need surgery. It must be noted at this point that the Plaintiff received the Epidural shot a year after the order/recommendation was made by surgeon, Dr. Francville in 2008 and was denied by defendant Dr. Hugh Hood.

The Plaintiff points out the fact that defendant Hugh Hood, on November 20th, 2008 in speaking with the Plaintiff again about his back problems and pain, knew of the Plaintiff's back condition after reviewing the MRI that showed Plaintiff's disk bulging which was causing him a great deal of pain, and defendant Hugh Hood denied proper treatment offsite and proper pain medication.

Since the Epidural shot was of no help to the Plaintiff, Dr. Manuel Pauparinas ordered the Plaintiff another MRI which was done on or about December 28, 2009. Another MRI showed

12

that the Plaintiff had joint degenerative change which was slightly worse than before.

Dr. Pauparina kept the Plaintiff on Nortan for pain and even tried several times to get the Plaintiff an order to be sent to an off-site pain clinic. Defendant Hugh Hood denied all the requests/recommendations.

Prior to Dr. Manuel Pauparina leaving the Limestone Correctional Facility as a doctor, he told the Plaintiff that even though he is a doctor here at Limestone, he too had to put up with discrimination.

After Dr. Pauparina left the Limestone Correctional Facility, the Plaintiff was seen by a new doctor at Limestone by the name of Dr. Falkman. Dr. Falkman put the Plaintiff in to see a surgeon after his first visit/appointment with her. This was denied by someone above Dr. Falkman, probably by defendant Hugh Hood. Dr. Falkman left the Limestone Correctional Facility less than a month after she saw the Plaintiff and put him in to see a surgeon.

Subsequent to Dr. Falkman leaving Limestone, the Plaintiff saw a couple of more doctors at the Limestone Correctional Facility seeking help. One of the doctors the Plaintiff saw for help was Dr. Barrett. Dr. Barrett ordered another MRI for the Plaintiff after seeing the Plaintiff and also decided the Plaintiff needed to see a surgeon. This MRI was done on or about March 11th, 2011. This MRI showed loss of normal convexity. But when Dr. Barrett saw

13

the Plaintiff after the MRI was done, Dr. Barrett told the Plaintiff that he had spoken with defendant Hugh Hood and agreed with him that there was no need to send the Plaintiff to a surgeon. This was after Dr. Barrett himself had recommeded that the Plaintiff be seen by a surgeon. Dr. Barrett took the Plaintiff off of his dortan pain medication and put him on another medication for pain. Subsequently this pain medication was stopped by defendant Hugh Hood on or about July 24th, 2012. The Plaintiff filed a grievance form to which defendant karen Amberski responded.

moving forward to approximately a year later, the Plaintiff filed a medical grievance on 6/17/2012 asking to be sent to an orthopedic surgeon since pain management was of no help. In response to the Plaintiff's grievance, defendant Karen Amberski responded in pertinent part:

"Your symptoms do not match the documented problem at the present time. You are not a surgical candidate. But, you can have this conversation with ___?___ M.D."

Later the week of 6/17/2012 or about a week later the Plaintiff went to see the new Limestone Correctional Facility doctor, Dr. Dr. Paluokonic. The Plaintiff asked Limestone Correctional officer Robinson to be present when asking for an off-site appointment with an orthopedic surgeon in Huntsville, Alabama for a second opinion. The Plaintiff asked for officer Robinson to be present because she is familiar with this Plaintiff's on-going struggle to get proper help and surgery. Even though the doctor was

14

apprehensive of doing so, he put the Plaintiff in for an appointment.

Subsequently, on or about July 12th, 2012 the Plaintiff was sent to Sports-Med in Huntsville, Alabama to be seen by Dr. Fredudenberger whom, after examining the Plaintiff, ordered surgery for the Plaintiff and recommended that surgery be expedited (A.S.A.P.) after a current MRI to make sure that he would not have to do something extra. The surgeon also explained the problem sciatica nerve, the procedure, how long it would take etc.

On or about July 24th, 2012 the Plaintiff was seen at the Limestone Correctional Facility by Dr. Paluokocuic. After seeing the surgeon's, Dr. Freudenberger's, report and recommendation for a new MRI and then surgery, it was arranged for the Plaintiff to get an MRI. The Plaintiff did get the MRI done and was waiting to be sent to get surgery.

On 7/25/2012 the Plaintiff filed a grievance because he was not receiving his pain medication as ordered by the doctor, and he was suffering from back pain. The Plaintiff pointed out that he had severe back problems and that Ibuprofen was of no help. In response to the Plaintiffs 7/25/2012 grievance, defendant Karen Amborski stated in pertinent part:

"On 1/24/2012 M.D. Paunakovic did order you pain medication. It was not approved by M.D. Hood. On 1/26/2012 you were ordered an MRI to find out what the problem is, your MRI in 2011 did not

15

show any damage so we are trying to find out what is
wrong with you, but they will not approve opiate pain
medication for chronic pain."


After waiting to be sent to get surgery and not being sent
to get back surgery, and not recieving his pain medication as
prescribed by Dr. Pavnakovic, the Plaintiff filed a grievance appeal on
8/02/2012.  In her response to the grievance appeal, defendant
Karen Amborski responded in pertinent part;
   "M.D. Pavnakovic recommended you to have the medication
   till your surgery. M.D. Hood disapproved it because your
   problem is chronic pain."


On or about 8/15/2012 the Plaintiff filed another grievance
because he still had not been sent to get his surgery and no
other inmates were ever having to go through all of what he
was having to go through. Defendant Karen Amborski responded;
   "As far as your treatment, we cannot proceed with anything
   till we have the written medical report from your exam.
   We still have not received it from the ? surgeon. ... I
   need the report to move forward. The report has been
   requested".
But, defendant Amborski had seen the report, and recommendation
from the surgeon herself on July 24th, 2012 when Dr. Pavnakovic
showed it to her.  Defendant Amborski knew that they had
already received the surgeon's report and recommendation when
she responded to the Plaintiff's 8/02/2012 grievance appeal concerning
16

his pain medications being denied until his surgery, and the fact that they had sent the Plaintiff to get the MRI done as ordered or recommended by the surgeon, Dr. Freudenberger, on or about July 12th, 2012.

For the next month or so following July 25th, 2012 this Plaintiff got the run-around from defendant Karen Amborski. The Plaintiff wrote the Limestone Correctional Facility Warden three times for help because he was in so much pain and could not get any adequate medical attention or care. The Plaintiff spoke to Limestone Correctional Facility Captain Smith a few times about his medical problems. When Captain Smith and the Plaintiff went to speak with defendant Amborski she still denied that there was any recommendation or order for the Plaintiff to get back surgery and claimed that she was still waiting to hear from the orthopedic surgeon. In a grievance, defendant Amborski went as far as to say that the recommendation/order for the Plaintiff's surgery was not in his medical jacket.

On or about September 11th, 2012 defendant Karen Amborski got with the new doctor at Limestone, Dr. Stubbs, to send the Plaintiff to an orthopedic surgeon. Defendant Hugh Hood denied it. The Plaintiff was instead sent to a Nuerologist by the name of Dr. Mulpur at Huntsville. Dr. Mulpur informed the Plaintiff that he had not suffered a stroke, but had a pinched nerve. This was in October, 2012. Defendant Karen Amborski told the Plaintiff that if it is not a stroke after the Plaintiff seeing the Neuro-Specialist, Dr. Mulpur, she would send the Plaintiff to an Orthopedic surgeon.

17

but defendant Amborski never did.

The Plaintiff filed another grievance on 11/02/2012 about Defendant Amborski telling him that if the Nuerologist found that the Plaintiff had not suffered a stroke, she would send the Plaintiff to an orthopedic surgeon, and not doing what she told the Plaintiff she would do. Defendant Amborski responded, "Come see me".

Pursuant to defendant Amborski's instructions, the day after receiving defendant Amborski's response to the grievance, the Plaintiff went to the Limestone Correctional Facility Health Care Unit on November 8th, 2012, to see defendant Amborski. Present at the meeting with defendant Amborski were Dr. Stubbs and Captain Smith, Captain at the Limestone Correctional Facility. Dr. Stubbs told the Plaintiff that there would be no appointment for the Plaintiff to be seen by an Orthopedic surgeon, period, end of discussion, leaving the Plaintiff feeling mentally frustrated, adgitated, helpless, and stressed. It was then that the Plaintiff felt that the only way of him getting help was to take the advice of several Limestone Correctional officials who knew what the Plaintiff was going through and being discriminated against and file a lawsuit.

In February, 2013 the Plaintiff went to the Limestone Correctional Facility Health Care Unit again because of his back problems and suffering extreme pain. The Plaintiff was seen by Dr. Stubbs

18

and the doctor Stubbs put the Plaintiff in to receive another Epidural shot which Dr. Stubbs himself had once mentioned, Two weeks later, dr. stubbs told the Plaintiff that defendant Hugh Hood had denied the Plaintiff the Epidural shot.

On or about may 15th, 2013 the Plaintiff was again seen by Dr. Stubbs concerning the Plaintiff's back problems and the extreme pain and difficulties he was suffering as a result thereof, Dr. Stubbs sent a request to defendant Karen Amborski for the Plaintiff to be sent to an orthopedic surgeon.

On or about June 21st, 2013 at a follow-up visit to Dr. Stubbs, he informed the Plaintiff that defendant Hugh Hood had denied the recommendation or order for the Plaintiff to be seen by an off-site orthopedic surgeon 16 days after the recommendation or order was made.

The Plaintiff suffering extreme pain, barely able to walk even with the aid of a cane, unable to stand for any period of time even with the aid of a cane, and unable to sit for any extended period of time because of his extreme back pain, wrote defendant, Assistant Warden of the Limestone Correctional Facility, Jimmy Patrick a letter requesting his help in getting the Plaintiff adequate medical care and relief.   After waiting and not receiving any help, the Plaintiff wrote defendant Patrick a second letter/ complaint for help in this matter on August 28th, 2013 and spoke with Warden/ defendant Patrick on the thursday after

19

that in person and he told the Plaintiff that he would go speak to defendant Amborski. The Plaintiff never heard anything from defendant Amborski about it and never received any proper and adequate medical attention or treatment. Subsequent to the first conversation, the Plaintiff happened to see defendant Patrick again and he asked the Plaintiff if they [Defendant Amborski and the medical personnel] ever did anything for him, and the Plaintiff told him, "No". Defendant Patrick said that he would go talk to them again. The Plaintiff never heard anything from defendant Amborski about it and never received any proper and adequate medical attention or treatment.

The Plaintiff wrote Limestone Correctional Facility Warden, defendant Dewayne Estes three (3) letters/complaints because he was suffering such excruiating back pain, was barely able to walk even with the aid of a cane, unable to sit for any period of time, unable to stand for any period of time even with the aid of a cane, and the Plaintiff's pain never stops, trying to get defendant Estes to help get the Plaintiff adequate medical care and treatment. Defendant Estes never responded to the Plaintiffs letters/complaints and never got the Plaintiff any proper medical care, proper medical treatment, or any adequate medical care.

In cold weather the Plaintiff is even more prone to increased pain. The Plaintiff's pain never stops irregardless of the weather and was not, and is not any longer getting narcotic pain medication and the now prescribed pain medication is of little or no help.

20

The Plaintiff struggles with every step he takes even with the aid of a cane. He has tremendous trouble and suffers excruciating pain in trying to walk from his assigned dorm to and from the Health Care Unit, Canteen, store, and to the Kitchen to eat. Due to his back condition and pain the Plaintiff has problems trying to stand in the shower to bathe. The Plaintiff cannot stand or walk for more than three (3) minutes before his back pain becomes extreme. When the Plaintiff sits, he cannot sit long at a time because of the pain in his lower back and has terrible difficulty in trying to stand up straight after sitting. The Plaintiff has to deal with sleepless or restless nights due to his continuous and ongoing back pain and back problems, and suffers anxiety for fear that he may have irreparable nerve damage. Most Limestone Correctional Facility correction officers know from watching the Plaintiff trying to get around that he has severe medical problems and is obviously in pain and try to accomodate him by not making him stand in the chow line waiting to eat or stand in the store and canteen lines to purchase items.

On or about December 23rd, 2013 the Plaintiff went to sick call for an appointment to try and get some help because his condition was getting worse and the pain medications were not helping.

On or about December 30th, 2013 the Plaintiff had an appointment at the Limestone Heath Care Unit with defendant,

21

Dr. Hugh Hood. At this appointment the Plaintiff finally met defendant Hood face to face again. The Plaintiff explained to defendant Hood again the problem with his back, the pain he is being forced to endure, how he feels like its gotten worse, and his decreased mobility. The Plaintiff also explained that he was recommended or ordered surgery on July 12th, 2012.

Defendant Hugh Hood denied any knowledge of the Plaintiff being recommended or ordered back surgery. The Plaintiff pointed out the order or recommendation in his medical jacket to defendant Hood. The new dimestone Correctional Facility doctor, Dr. Rigaux was present with defendant Hood when this occurred.

Both defendant Hood and Dr. Rigaux told the Plaintiff that they did not think his problem was serious enough for surgery and that the Orthopedic surgeon, Dr. Fruedenberger at Sports Meds basically put the Plaintiff in for surgery for the money. Defendant Hood told the Plaintiff that he would not have a problem sending the Plaintiff back to see Dr. Freudenberger, but wanted to know if the Plaintiff would submit to another MRI first. It must be noted at this point that everything which has transpired since March 1, 2013 has occurred after the Plaintiff filed suit against defendant Amborski and Corizon Inc. pursuant to the Alabama Medical Liability Act, § 6-5-541 Ala. code in the dimestone County Circuit Court which was subsequently removed to this court and is now this case.

Of course, the Plaintiff could not refuse to submit to another MRI because the defendants would try to claim that

22

the Plaintiff was refusing medical care or treatment. The Plaintiff had an MRI done on or about January 9th, 2014. After having the MRI done the Plaintiff was seen by defendant Amborski and Dr. Rigaux at the Limestone Correctional Facility on or about January 14th, 2014 and they informed the Plaintiff that he would not be going to see the orthopedic surgeon. What defendants ? Hugh Hood and Karen Amborski, and Dr. Rigaux did was just a stunt to help the defendants try and avoid liability and injunctive relief because they knew of the lawsuit filed against the defendants by the Plaintiff.

The Limestone Correctional Facility Health Care Unit and numerous other places in the facility have security cameras. The security cameras at the Health Care Unit will show on the dates and times the Plaintiff has been present in the Health Care Unit just how obviously severe the Plaintiff's disability, and back problems are and that he is clearly in distress and pain when trying to walk or get up after sitting down.

This Plaintiff is a black male and the defendants have, during the time frame the Plaintiff has been suffering, approved and provided surgery for at least six (6) white male prisoners, to-wit: Barry Kidd, Wayne Hurst, Louis Odo, Bobby Smith, Thomas Trickey, and Kevin Roper whose back problems were as severe as the Plaintiffs in some cases and not nearly as severe as the Plaintiffs in other cases

23

and there are witnesses who can and will testify that inmates Barry Kidd, Louis Odo, and Kevin Roper were able to walk, move, and get around much, much better than this Plaintiff just days prior to them receiving back surgery.

## THE COMPLAINT

This is a civil action complaint brought by inmate Eric Kelly, an Alabama State prisoner who is incarcerated at the Limestone Correctional Facility in Harvest, Alabama pursuant to 42 U.S.C. §§ 1983, 1988 of the United States Code. The Plaintiff alleges that the defendants have violated his Eighth and Fourteenth Amendment rights and discriminated against him. The Plaintiff seeks money damages from each defendant, declaratory judgment, injunctive relief, attorney fees, and other specific relief.

## COUNT I

The Plaintiff alleges that defendant Corizon, Incorporated is a company who contracted, entered into a contractual agreement, or entered into a legal agreement of understanding with Kim Thomas, the Alabama Prison Commissioner or the Alabama Department of Corrections that said defendant provide medical care to inmates incarcerated in the Alabama prison system, including the Plaintiff, at the Limestone Correctional Facility. Medical care would be provided

24

to Inmates, including this Plaintiff, by the defendant's doctors, nurses, agents or employees pursuant to the contract, contractual agreement, or legal agreement of understanding.

The Plaintiff alleges that the defendant Corizon, Inc violated his Eighth Amendment rights when its doctors, nurses, agents or employees knew or should have known from the Plaintiff's medical records dating as far back as June, 2008 that the Plaintiff had a bulging disk at L4-5 in his back, a slipped disk in his back which had entrapped the sciatica nerve and was causing the Plaintiff pain and problems. The Plaintiff's medical condition was and is so serious through the date of filing this complaint that it is obvious to a lay person that the Plaintiff's condition was and is serious because he can barely walk, even with the aid of a cane, he is in obvious distress and pain. The defendant Corizon has been and is being deliberately indifferent to the serious medical needs of the Plaintiff by failing or refusing to send the Plaintiff for surgery to eliminate his back problems, pain and suffering.

## COUNT II

The Plaintiff alleges that the defendant Corizon, Incorporated having contracted with, entered into a contractual agreement with, or entered into a legal agreement of understanding with Alabama Prison Commissioner Kim Thomas, or the Alabama Department of Corrections to provide by and through the defendant's doctors, nurses agents or employees, medical care for Inmates, including this Plaintiff, at the Limestone Correctional Facility, violated this Plaintiff's Eighth

25

Amendment rights by being deliberately indifferent to the serious medical needs of the Plaintiff.

Defendant Corizon Inc. knew or should have known from the Plaintiff's medical records dating from June, 2008 through October 2012 and all the medical grievances and grievance appeals filed by the Plaintiff through the date of this amended complaint, and the defendant's doctors, nurses, agents or employees personally witnessing the Plaintiff trying to walk even with the aid of a cane, sit for any period of time and then try to stand up, that the Plaintiff has a bulging disk at L4-5 in his back and a slipped disk which has entrapped the sciatica nerve, that the Plaintiff is barely able to walk even with the aid of a cane, he has to struggle to try to stand up even using a cane after sitting, that the Plaintiff is in obvious pain and distress and in need of surgery.

The defendant Corizon Inc. has failed or refused to provide the Plaintiff with surgery, or send the Plaintiff to a surgeon for back surgery to correct the Plaintiffs medical problem and eliminate his pain and suffering. The defendant's failure or refusal to provide the Plaintiff with surgery necessary to correct his back problems is not only forcing the Plaintiff to endure extreme pain daily unnecessarily and suffer hardships in trying to walk, stand, sit and get up from a sitting position, bathe in a shower, and trying to sleep, unnecessarily, but can also cause the Plaintiff irreparable nerve damage.

## COUNT III

The Plaintiff alleges that the defendant Corizon Incorporated having contracted with, entered into a contractual agreement with, or entered into a legal agreement of understanding with Alabama Prison Commissioner Kim Thomas, or the Alabama Department of Corrections to provide, or provide by and through the defendant's doctors, nurses, agents or employees, medical care for inmates, including this Plaintiff, at the Limestone Correctional Facility have discriminated against the Plaintiff who is a black male, in violation of the Equal Protection Clause of the Fourteenth Amendment.

This Plaintiff, who is a black male has had a bulging Disk at ∂4-5 in his back dating as far back as June, 2008, he has been diagnosed as having a slipped disk in his back which has entrapped the sciatica nerve and has been recommended for back surgery more than once, but defendant Corizon Inc. has never arranged surgery for the Plaintiff and has never sent the Plaintiff to a surgeon for back surgery to be done to eliminate his problems and pain and suffering.

But Corizon Inc. has arranged for and sent white inmates, Barry Kidd, Wayne Harst, Louis Odo, Bobby Smith, Thomas Trickey, and Kevin Roper, who were incarcerated at the Limestone Correctional Facility with the Plaintiff, for back surgery and got back surgery to eliminate their problems, but have continuously denied this Plaintiff back surgery. Louis Odo, Thomas Trickey, Barry Kidd, and Kevin Roper were able to get around, stand, walk, sit and function much, much better prior to their surgery than this Plaintiff is able to do at present.

COUNT EV

The Plaintiff alleges that defendant Karen Amberski is employed by, contracted with, or supervised by Corizon Incorporated who contracted with, entered into a contractual agreement with, or entered into a legal agreement of understanding with Alabama Prison Commissioner Kim Thomas, or the Alabama Department of Corrections to provide, or provide by and through the defendant Corizon's doctors, nurses, agents or employees, medical care for inmates, including this Plaintiff, at the Limestone Correctional Facility.

The Plaintiff alleges that defendant Karen Amberski is employed or contracted with defendant Corizon and/or the Alabama Department of Corrections as Health Services Administrator at the Limestone Correctional Facility. In such capacity she manages or she is the head of the health services provided for inmates at the Limestone Correctional Facility.

The Plaintiff alleges that defendant Karen Amberski has been, and still is as of the date of this complaint deliberately indifferent to the serious medical needs of the Plaintiff which has caused the Plaintiff to suffer disabilities, excruciating pain and suffering unnecessarily since at least June, 2012. Defendant Amberski, in her capacity has the authority to review medical records of inmates at random, review doctors recommendations, and recommend or arrange surgery for inmates.

Defendant Amberski knew that the Plaintiff's medical records showed that he has a bulging disk at L4-5 in his back, that he

28

been previously diagnosed as having a slipped disk in his back which has entrapped the sciatica nerve and was causing the Plaintiff pain and problems, and that more than one doctor had recommended surgery for the Plaintiff on different occasions. Defendant Amborski was aware that the Plaintiff's condition threatened to cause him serious health problems in the future if he did not have surgery; such as, but not limited to irrepairable nerve damage and inability to walk and function as a normal man. Plus, the defendant had personally viewed the Plaintiff struggling to walk even with the aid of a cane, struggling to try and stand up after sitting with the aid of a cane, and that the Plaintiff was in obvious distress and pain, but the defendant never recommended, arranged, or used her authority to have the Plaintiff get the needed and necessary surgery to remedy his back problems and pain.

The defendant has violated the Plaintiffs Eighth Amendment rights.

## COUNT V

The Plaintiff alleges that defendant Hugh Hood is the regional doctor for the Alabama Department of Corrections and/or Corizon Inc. who contracted with, entered into a contractual agreement with, or entered into a legal agreement of understanding with Alabama Prison Commissioner, Kim Thomas, or the Alabama Department of Corrections to provide, or provide by and through defendant Corizon's doctors, nurses, agents or employees, medical care for inmates at the Limestone Correctional Facility.

29

The Plaintiff alleges that since about August, 2008 through the date of filing this amended complaint defendant Hugh Hood has been deliberately indifferent to the serious medical needs of the Plaintiff causing the Plaintiff not only to suffer severe pain and distress unnecessarily, but also threatens to cause the Plaintiff further health problems in the future, such as, but not limited to, irreparable nerve damage and inability to walk and function as a normal man.

Defendant Hood knew and was well aware that the Plaintiff's medical records since June 2008 show that the Plaintiff has a bulging disk at L-4-5 in his back, that the Plaintiff had a slipped disk in his back which had entrapped the sciatica nerve which was causing the Plaintiff problems and pain. Defendant Hood also knew that as a result of the Plaintiff's back problems he was suffering extreme pain and great difficulty in walking and standing for any period of time. Defendant Hood being aware of this:

(A) When Dr. Lampley recommended that the Plaintiff be sent to get back surgery on or about 6/30/2008, defendant Hood overrode Dr. Lampley's recommendation and denied the Plaintiff surgery,

(B) When Dr. Francuille of the Brookwood Medical Center in Birmingham, Alabama recommended an Epidural shot for the Plaintiff on or about 9/11/2008 and Limestone Dr. Doshi reviewed the Plaintiff's file later, Dr. Doshi found and told the Plaintiff that defendant Hood had denied the Plaintiff the recommended Epidural shot,

(C) When Limestone Dr. Paurparina tried to get an order approved for the Plaintiff to be sent to an off-site pain clinic, defendant

30

Hood denied all requests/recommendations.

(D) When Dr. Falkman put the Plaintiff in to see a surgeon, it was denied by someone above Dr. Falkman, probably defendant Hood.

(E) Dr. Barrett recommended that the Plaintiff see a surgeon in early March, 2011, but after talking with defendant Hood, he suddenly decided that the Plaintiff did not need to be seen by a surgeon.

(F) When Dr. Barrett took the Plaintiff off his Nortan pain medication and put the Plaintiff on another medication for pain, defendant Hood stopped the Plaintiff's pain medication on or about July 24th, 2012.

(G) When Dr. Fredudenberger recommended surgery for the Plaintiff and that surgery be expedited on or about July 12th, 2012, it was apparently defendant Hood who actually blocked that.

(H) When Dr. Pavnakovic ordered pain medication for the Plaintiff on 1/24/2012, defendant Hood disapproved it.

(I) When Dr. Pavnokovic ordered or recommended surgery for the Plaintiff on or about July 24th, 2012, it was defendant Hood who disapproved it.

(K) When Dr. Stubbs recommended or ordered that the Plaintiff be sent to an orthopedic surgeon on or about 9/11/2012, it was defendant Hood who denied it.

(L) When Dr. Stubbs put the Plaintiff in to receive an Epidural shot in February, 2013, two weeks after he did so he informed the Plaintiff that defendant Hood had denied the Plaintiff an Epidural shot.

(M) When Dr. Stubbs sent a request to defendant Amborski on or about 6/21/2013 for the Plaintiff to be sent to an orthopedic surgeon, it was defendant Hood who denied it.

Due to the deliberate indifference of defendant Hugh Hood, the Plaintiff has not only been forced to needlessly and unnecessarily suffer extreme pain, distress, lack of normal mobility and disabilities, but also, now due to lack of any adequate medical care and surgery because of the defendant the Plaintiff can barely walk with the aid of a cane, he cannot sit for any period of time and has to struggle to get up after sitting even with the aid of a cane, has problems standing in the shower to bathe, he suffers excruciating pain, and has to deal with sleepless nights and restless nights due to his continuous back pain and back problems.

The defendant has violated the Plaintiff's Eighth Amendment rights.

## COUNT VI

The Plaintiff alleges that defendant Hugh Hood is the regional doctor for the Alabama Department of Corrections and/or Corizon Inc., who contracted with, entered into a contractual agreement with, or entered into a legal agreement of understanding with Alabama Prison Commissioner, Kim Thomas, or the Alabama Department of Corrections to provide, or provide by and through defendant Corizon's doctors, nurses, agents or employees medical care for inmates at the Limestone Correctional Facility.

The Plaintiff alleges that defendant Hugh Hood discriminated against the Plaintiff in violation of the Equal Protection Clause

32

of the Fourteenth Amendment,

The Plaintiff is a black male who has been suffering back problems and severe pain as a result of a bulging L4-5 disk, and a slipped disk which has entrapped the sciatica nerve. The Plaintiff has been recommended or ordered surgery by various doctors since 2008 only to be denied back surgery by defendant Hugh Hood. The Plaintiff's condition has worsened to the extent that he can barely walk even with the aid of a cane, he cannot sit or stand for any length of time or walk without suffering severe pain, and he has to struggle to stand up from a sitting position even with the aid of a cane.

While denying this black Plaintiff surgery on his back, defendant Hugh Hood, within the past year has approved and arranged back surgery for at least six (6) white inmates here at Limestone, to-wit: Barry Kidd, Wayne Hurst, Louis Odo, Bobby Smith, Thomas Trickey, and Kevin Roper. Five of these white inmates back problems were not nearly as severe as the Plaintiff because they had much, much better mobility and activity just prior to their surgery than this Plaintiff has now and apparently were not suffering nearly the pain this Plaintiff suffers because they moved around so freely just prior to surgery where this Plaintiff cannot.

33

COUNT V EE

The Plaintiff alleges that defendant Warden Dewayne Estes is employed by the Alabama Department of Corrections as Warden of the Limestone Correctional Facility. In such capacity he is responsible for the day to day operation and management of the Limestone Correctional Facility and the safety, health and well being of all inmates confined and incarcerated therein.

The Plaintiff alleges that defendant Dewayne Estes has been and is deliberately indifferent to the serious medical needs of the Plaintiff in violation of the Plaintiff's Eighth Amendment rights.

In or around August, 2013 the Plaintiff wrote defendant Estes a letter requesting his help in getting the Plaintiff some adequate medical attention, treatment and back surgery because he was in so much pain, his condition was worsening and he could barely get around because of his back problems and suffering such severe pain. Defendant Estes never responded to the Plaintiff's letter nor talked to him about the problem. The Plaintiff after not hearing anything from defendant Estes, wrote defendant Estes a second letter, and defendant Estes failed or refused to respond to the Plaintiff's second letter or talk with the Plaintiff about the problem. After not hearing anything from defendant Estes, the Plaintiff wrote defendant Estes a third letter requesting him to help get the Plaintiff some adequate medical attention and treatment,

34

and back surgery. Defendant Estes never responded to the Plaintiff's third letter and never talked with the Plaintiff about the problem.

## COUNT VIII

The Plaintiff alleges that defendant Assistant Warden Jimmy Patrick is employed by the Alabama Department of Corrections as assistant Warden of the Limestone Correctional Facility. In such capacity he is responsible for the operation of the Limestone Correctional Facility on a daily basis and the safety, health and wellbeing of all inmates confined and incarcerated therein.

The Plaintiff alleges that defendant Jimmy Patrick was and is deliberately indifferent to the Plaintiff's serious medical needs in violation of the Plaintiff's Eighth Amendment rights.

The Plaintiff suffering extreme back pain, barely able to walk even with the aid of a cane, unable to stand for any period of time even with the aid of a cane, and unable to sit for any extended period of time because of his extreme back pain, wrote defendant Jimmy Patrick a letter requesting his help in getting him adequate medical care and relief. After waiting and not receiving any help, the Plaintiff wrote defendant a second letter/complaint for help in this matter on 8/28/2013. The Plaintiff spoke with defendant Patrick on the Thursday thereafter in

35

person and the defendant told the Plaintiff that he would go speak to defendant Karen Amborski. The Plaintiff never heard anything from defendant Amberski about it and never received any adequate medical treatment or surgery. Subsequent to the first conversation with defendant Patrick, the Plaintiff happened to see defendant Patrick again and he asked the Plaintiff if they [ Defendant Amborski and medical personnel ] ever did anything for him, and the Plaintiff told Warden Patrick "No". Defendant Patrick said he would go talk to them again. The Plaintiff never heard anything from defendant Amborski about it and never received any proper, adequate medical treatment or surgery.

Defendant Patrick has the authority to make the Health Care Unit pull the Plaintiff's medical file so he could look at it if he wanted to, but he didn't. The Plaintiff's physical and medical condition is clearly obvious to even a lay person. Warden/defendant Patrick would clearly see that the Plaintiff was having difficulty walking and standing with even a cane to assist him and that the Plaintiff was in pain and distress. Warden/Defendant Patrick possesses the authority to order defendants Amborski, Hood and Corizon personnel at the Limestone Correctional Facility to take the Plaintiff to an off-site specialist or surgeon for an evaluation and surgery, but defendant Patrick failed or refused to do so.

36

## RELIEF REQUESTED

Wherefore, the Plaintiff prays that this Court will:

(A) Award to the Plaintiff $200,000.00 in compensatory damages from each defendant,

(B) Award to the Plaintiff $650,000.00 in punitive damages from each defendant.

(C) Award to the Plaintiff a declatory judgment.

(D) Award to the Plaintiff a permanent injunction enjoining or barring the defendants from denying the Plaintiff back surgery, free-world doctor prescribed medications and recommended therapy.

(E) Award to the Plaintiff a permanent injunction enjoining or barring the defendants, their agents or employees from retaliating against the Plaintiff for filing and pursuing this action.

(F) Select a professional back/orthopedic surgeon for the Plaintiff to be sent to for surgery and order the defendants to take the Plaintiff for surgery by a specific date,

(G) Award reasonable attorney fees if the court appoints counsel to represent the Plaintiff.

Done this the 14th day of March, 2014.

Respectfully submitted,

Eric Kelly #214653

Eric Kelly
Plaintiff Pro se

37

## CERTIFICATE OF SERVICE
### SWORN TO UNDER OATH

I hereby swear under penalty of perjury that I am on this the 14th day of March, 2014 serving a copy of the foregoing "Final amended complaint upon the Clerk of the U.S. District Court for the Northern District of Alabama, 1729 - Fifth Avenue North - Birmingham, Alabama 35203-2040 and upon:

Counsel for Karen Amborski and Corizon, Inc.
   STARNES / DAVIS / FLORIE LLP
   Seventh Floor
   100 Brookwood Place
   P.O. Box 598512
   Birmingham, Alabama 35259 - 8512

by placing copies of the same in the U.S. Mail, Limestone Correctional Facility Legal Mail properly addressed postage prepaid.

Sworn to under penalty of perjury on March 14th, 2014

Respectfully submitted
Eric Kelly

Eric Kelly - Plaintiff
AIS # 214653 - Dorm I - 77-13
28779 Nick Davis Road
Harvest, Alabama 35749

38